United States v. Alex Melendez Good morning, your honors. I stand here today asking you to reverse Judge Kestel's case and sentence in the instant matter, and that's based on a number of both procedural grounds and excessive sentence grounds. The procedural grounds, as we've set forth in our papers, is that Judge Kestel believed that he was sentencing my client under the first count, which was the drug count, and that he opined that the drug count did not take into consideration the dangerousness and violence that can be caused in a sham drug transaction. However, if you look at the analysis of the sentencing guidelines, it was the felon in possession count that, in fact, was the driving force behind the calculation of the guidelines. And as you may or may not recall, the guidelines were calculated to go between 33 and 41 months. Well, I think what the district court was saying, the clear fact is that this kind of a transaction in which you try to swindle other drug dealers has a much higher likelihood of violence than just being a felon in possession. A felon in possession frequently is a circumstance that has very, very low likelihood of violence, but the nature of this transaction with guns involved clearly had a very high likelihood of violence. There's no basis upon which Judge Kestel made that determination other than an opinion that he may have held. I respectfully- I was just thinking about it. Common sense. Is it common sense? Well, common sense says that, at least when I'm standing before a judge when I have a felon in possession or I have a drug case, I'm hearing the very same language. I'm hearing that these are violent, and admittedly so. I'm not denying that they're violent. I don't think the violence was any more extraordinary in this particular case. Shooting and killing? That's pretty violent. Well, shooting and killing is pretty violent, yes, but my client didn't do the shooting or the killing. Can I tie it back to the standard? So it's a plain error standard, so that you have to show that it's clear and obvious, but the fact that you aren't able to point to any case law suggests to me that maybe, at the very minimum, it's not clear or obvious. We could have a disagreement, but why does it mean plain error? Well, first of all, it's exceedingly rare for this circuit to overrule a district judge's decision. So the fact that there aren't case law to rely on to show the plain error is not surprising. It's exceedingly rare for this court to overrule a district judge's decision? District judge's sentencing decision. Well, I'm just wondering- I mean, maybe I view it that way. You may not view it that way. I remember at one time seeing somebody had counted like a 20% reversal rate in the cases that we heard. Is that what you call exceedingly rare? But you're limiting it to sentencing decisions. Correct. They are rarer, I agree. That's because, could that be because the law is that district judges have very, very wide discretion in sentence? Absolutely. And I don't even disagree with that position in the law, because they're the ones who hear it and see it and experience it. But in this particular case, I felt that there was an egregious misappropriation of the law for this particular young man under these set of circumstances. I need to go back to the standard, though, again. At least that would help me. You cite no case law, so it can't be clear and obvious on the basis of case law. Is there a particular section of the guidelines that support your proposition that these two, what was applied, incorporates the idea of this violent transaction? I just don't know how we find plain error if we don't have a specific proposition and we don't have a case law. Well, I mean, the specific proposition, and you may disagree with it, were the procedural propositions that we claimed Judge Castell violated. But in addition to that, there is no support in the district judges' holding that sham drug transactions are more dangerous than others. And there's no reason to submit to you, Your Honor, that the sentencing guidelines as they are written don't already deal with the level of violence of any and all drug transactions. The guidelines were calculated on the basis of a 10-gram sample. Correct. And in fact, the transaction was for what would have been a kilo if it had been actual. So wasn't it appropriate for the court to take that into account? That it was more serious than a 10-gram transaction? Yes, I think the court could have taken that into account. I don't think the court needed to take it into account in doubling the guideline calculation. Well, and also the nature of the crime, the crime resulted in someone being killed. The crime did result in someone being killed, but my client was... In light of all those things, a 65-month sentence, does that shock the conscience? Well, it shocks the conscience when your client is not the person who did the killing. Yes, it does. When your client stupidly, terribly, in a violent manner participated with a group. You're saying it's unusual in law for people to be held responsible when they participate in a crime that results in a death? You're arguing to us that that's an unusual, rare, bizarre circumstance? I don't think it's unusual, but I do think it's excessive. Okay. And that's what I'm saying here. So is there a case that you can cite to that suggests... I mean, so we've moved past the procedural, and now we're in the substantive. So can you cite to me a case that best supports your position that this is conscience-shocking? Well, I mean, there are some cases that suggest that they are conscience-shocking, and they are cases that relate to immigrants, to child victims. Let's see here. I believe the McGowan case and the Sindema case are two such cases. But it is a case where there was, I think, complete lack of consideration for who the defendant was and what were those aspects which courts must consider when they're analyzing whether or not to sentence an individual to the guidelines or to above the guidelines. I mean, this was not an individual who just grew up poor. I mean, I represent individuals who grow up poor. You had a point in your brief about the Tapia case. Do you want to talk about that? I don't think we have a Tapia violation here. I withdraw that. We'll hear from you on... Okay. Thank you so much. Thank you. Good morning. May it please the court, my name is Nicholas Tucciolo. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, as I did in the proceedings below. I want to address two points that opposing counsel made during her argument. First, I want to clarify that the two counts that the defendant pled guilty to, the narcotics offense that related to the sham transaction and the felon in possession offense, are related to two totally separate offenses. One was the sham narcotics transaction that resulted in the death of another individual. And the second was from events that occurred weeks later when the defendant was apprehended in possession of a firearm while on parole and having been previously convicted of a felony offense. So they're two separate offenses that Judge Castell considered separately. Judge Chin, you noted that had it been a kilogram, an actual kilogram of drugs and not sham, the guidelines would have been a lot higher. And just to put a finer point on that, not only would they have been a lot higher, they would have been more than double. If you look at Section 2D1.1 of the guidelines, it's an offense level 12 for under 500 grams. It's a level 24 for a kilogram of cocaine, which results in more than a double sentence. So it's true that there would have been a significant difference in the guidelines had it been a real kilogram of cocaine. So as the record demonstrates here, Judge Castell carefully considered- I'm not sure I understand the relevance of that argument. I mean, this transaction did not involve a kilogram. It involved a sample, and they had no intention to deliver. They lied about their intention to deliver a kilogram. So the drug offense wasn't a kilogram. If I say to somebody, I'll sell you some drugs and give me $100 and here's some drugs, that's not a drug offense if I deliver sugar, right? That's exactly right, Your Honor, and that's why the guidelines here on the drug offense only took account of the 10 grand sample that the defendant furnished in advance of the drug offense. Does that justify augmenting the sentence for drugs that were talked about and promised, but that didn't exist? Judge Castell did not. There's no evidence in the record that Judge- I don't understand the point of your argument. I was just responding to Judge Chin's question when he asked- Well, it goes to intent in the sense that they were pretending to do something more significant. I think firing the sentencing judge would be worth something. I don't know how much. I'm not trying to suggest that the defendant should have been held accountable for sham narcotics, and that's not what Judge Castell did, and that's not the basis of Judge Castell's upward variance, as he made very clear both in his oral statement of facts and his written statement of facts. Mr. Chisholm, can you focus on your colleague's argument that the district court failed to consider his personal challenges, including his traumatic childhood and his mental health issues and substance disorder and the like? Your Honor, that's just simply belied by the record. Judge Castell, in announcing the basis for his decision both orally and in his written statement of reasons, specifically said he considered the defendant's troubled upbringing. I think Judge Castell referred to the fact that the defendant, Mr. Melendez, was born with deficits. And so Judge Castell explicitly referenced the mitigation. Mr. Melendez's argument here is, though, it simply comes down to he disagrees with how much Judge Castell weighed those mitigation factors against the many aggravating factors here. As to the need for mental health treatment and substance abuse treatment, again, Judge Castell specifically, although he's not required to, specifically said that he considered that an imposing sentence among the factors he weighed. So those things that my adversary says Judge Castell did not consider, the record specifically shows that the judge considered those facts in determining sentence. And in imposing that 65-month sentence, the district court, Your Honor, as you pointed out, there's no cases that, at least that the government could find, that would show that that would be shockingly high or outside of an abuse of the judge's considerable discretion. And the defense, Mr. Melendez has certainly not identified any procedural error of any kind, let alone one that would be plain. So I'm happy to answer any other questions that the court has. At some point in your argument, would you address the Tapia argument which the defendant made? Yes, Your Honor. First, I would note that to the extent it's not really an argument that Mr. Melendez is advancing here, and they don't really develop it in their brief, so it's somewhat difficult to respond to it. But putting that aside, there's no evidence in the record suggesting that the district court lengthened Mr. Melendez's sentence on the need for mental health and drug treatment. That's what I'm puzzled by. What's the pertinence of mentioning the need for mental health treatment, if not of citing that as a factor justifying the sentence, if it doesn't mean that it's something that would make the sentence longer than it otherwise would have been without that? What would the district court mean by talking about the need for mental health, if not something that justifies a sentence longer than it would be if there were no need for mental health? Yes, Your Honor. I think the relevance of it is that Section 3553A specifically requires the district court to consider it, and I think it's Judge Castell acknowledging I have considered this in my sentence. Because if otherwise it would be the argument, you didn't consider his need for mental health treatment. And so I think it's an acknowledgment on Judge Castell's part of carefully considering all of the arguments. Unless there are any other questions, I'll rest on the government's written submission. Thank you. Ms. Carty, you have two minutes. My memory was refreshed when I looked at my notes. It was not only Judge Castell who exceeded the guidelines, but probation recommended a 33-month sentence, knowing full well of what all of the facts and circumstances were as a result of this particular incident. And I have to say that it is rare when the probation department supports a sentence of that kind when the court and the prosecutor decide to go above the sentence that was in the plea agreement. And I think one of the things that the probation department looks at quite clearly is my client's history and background, and took it very seriously and said to the court, this is what we think. So can you respond to Mr. Tuchel's argument that there's just a dispute over weighing here as opposed to a legal standard that's been met for vacating or reversing? I'm sorry, I didn't . . . And applied their guidelines and that there's not actually an actionable mistake that we can do something about or that we should be doing something about. Will you please respond to that, that this is not just a quibbling over weight? No, I don't think it is a quibbling over weight at all. I think that the facts in this particular case for this particular man were pretty horrific. I thought that Judge Castell's analysis of it, he punished him, or his punishment, exceeded what was necessary or required under the circumstances. And I thought he gave short shrift to my client's personal issues and was, and again, I'm not critical of him, but was certainly motivated by the passionate speech of the family who spoke about my client's, one of my client's, best friends. I mean, this was not a situation where, you know, either, had the roles been reversed, had I been representing the deceased, you know, would they have, and he was my client, would they have been coming in and saying he was responsible for the death of Mr. Melendez? Thank you so much. We'll take it as a recommendation. Thank you.